Johnson, J.
It will not be questioned that the legal estate in the property of the wife vested in the husband on the marriage. At the time of the execution of this deed, the property which it professes to convey to her was her own, consequently the defendant, Rumph, had no interest, and could convey none, so that, in a legal point of view, the deed was a nullity. The result would have been the same if the property had been in the defendant, Rumph, and by him conveyed to his intended wife ; all the personal goods of the wife, from whatever source the title may be derived, vest absolutely in the husband on the marriage. But contracts in consideration of marriage are greatly favored in chancery, and as between the parties themselves, and other persons falling within the express objects of contract, they will be enforced according to the obvious intent, however informally or irregularly they may have been executed ; and that, although they may, as in this case, hare been rendered inoperative at law by the intermarriage of the parties, and equity will regard that as already done which ought to have been done, to give full and legal effect to the intention of the parties.
*These rules are sanctioned by this Court in Colclough and Wife r*, v. Colclough, administrator of Carolan, decided at Columbia, at L May Term, 1831, which in most of its features bears a striking analogy to the case in hand. Philip Carolan and Mary Davis, in contemplation of marriage, entered into an informal agreement, by which it was provided that the property of the intended wife should be settled to the use of the children of the marriage, and in default of children, to the use of the wife for life, and at her death, to such person as she might devise it, without providing for the case of her dying intestate, and she was declared by the deed to be the sole trustee of the property. The marriage was had, and the wife, Mary, died without any issue of the marriage and intestate. The husband survived the wife and retained possession of the property until his death, which occurred sometime after. He left neither wife nor any other known relation, and died intestate. The question was, whether the property was distributable amongst the heirs of the wife or vested in the husband and escheated for the want of heirs, and it was held that the heirs of the wife were entitled to take by descent. And my brother Harper, who then presided in the Court of Chancery, after laying down the rule that marriage articles will be carried into effect in Chancery by pursuing the intention of the parties so far as the rules of law will permit, remarks, “that if the parties themselves had executed that agreement by conveying to trustees to hold *10 to the separate use of the wife for life, remainder to the children of the marriage, remainder in default of children, to such person as the wife might appoint, without any further disposition, the undisposed of equitable remainder must have continued in the wife herself,” and would, in effect, have operated as a limitation to her right heirs and legal representatives, in the event of her failing to make the appointment.
Iuformal and inartificial as the deed under consideration certainly is, there is no question about the intention of these parties. Janet Allen was possessed of slaves and other personalty bequeathed to her by her deceased husband, and was about to enter into matrimony with the defendant, Rnmph. He, reciting the intended *marriage, under-1 takes to convey this property to her, and regarding the terms her heirs, executors, administrators and, assigns, as only expressive of the quantity of the estate.intended to be conveyed, and not as a limitation over, it covers the entire, the absolute estate. To give effect to this contract at law, the conveyance ought to have been to some third person as trustee for these uses, but equity presumes that done, which ought to have been done, and in adjusting the rights of the parties in this Court, we must suppose that the intended husband and wife, George Rumph and Janet Allen, had joined in a deed conveying this property to some third person, in “trust for the said Janet, her heirs, executors, administrators and assigns.” In that case, it is obvious that the marital rights of the husband could not attach, because the property was in another, and not in the wife. It could not attach after the death of the wife, because the bond which united them, and conferred on the husband a right of property in her goods, unless as an heir, was dissolved on the instant of her death. It is true, as in the case of Colelough and Wife v. Colclougli, Administrator, the heirs of the wife, as between themselves and the husband, are entitled to have distribution of the estate, and under the Act of 1791, the defendant, the husband, is entitled to one-third, and the plaintiff’s testator, her surviving- son, to the remaining’ two-thirds.
According to this view of the case, the creditors of the defendants would only be entitled to his one-third part of the fund. But the Act of 1792, (1 Faust, 209,) declares that all marriage contracts, deeds or settlements, shall specify and particularize the property intended to be settled, or shall have a schedule thereunto annexed, containing a particular description of it, and in default of such schedule, they are declared to be fraudulent, null and void, with respect to and against creditors, and bona fide purchasers and mortgagees; with a proviso, that the settlement should be good notwithstanding, as to debts contracted by the husband before marriage. In this deed, the property is described, as that “ to which Janet Allen is entitled to, under the will of her husband, Josiah Allen, or to which she maybe entitled, independent of the will;” certainly not corresponding with the particularity intended by the Act, nor is there any schedule connected with it, containing a more certain description. It is therefore void as to creditors.
The creditors claiming, are, according- to a list of judgments, which has been brought up here, all for debts contracted subsequent to the marriage. It is therefore ordered and decreed, that *one-third of ' ’-I the fund in the hands of the attorney for the creditors, be applied to the payment of the debts, according to their legal priority, and if that *11 should satisfy all the debts, that the remaining two-thirds be paid over to the plaintiff; but if the one-third shall be insufficient to pay the debts, the remaining two-thirds, or so much thereof as may be necessary, be applied to the payment of the remaining debts, according to their legal priority, and the balance, if any, be paid to the plaintiff.
Elmore and Edwards, for the appellant.
Memmmger and King, contra.
Harper., J., concurred.